## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

KHALED M. RASHAD,      :
                        :
    **Plaintiff,**      :
                        :   **Case Number: 2007-cv-1673 (RMC)**
     **v.**         :   **Judge: Rosemary M. Collyer**
                        :
**DISTRICT OF COLUMBIA,**  :
*et al.,*                :
                        :
    **Defendants.**     :
_____:

## DEFENDANT DISTRICT OF COLUMBIA'S MOTION TO DISMISS THE
## COMPLAINT OR, IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

The District of Columbia (hereinafter "the District"), by and through its attorney, the Office of the Attorney General for the District of Columbia, hereby moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint because plaintiff failed to state a claim upon which relief can be granted.  The defendant specifically argues that:

1. Plaintiff's claims are barred by his failure to exhaust his administrative remedies under the Prisoner Litigation Reform Act "PLRA".

2. Punitive damages are not available against the District of Columbia.

The District respectfully requests this Honorable Court to dismiss the complaint for the reasons stated in the accompanying memorandum of points and authorities attached hereto.

Date: March 26, 2008.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of
Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

____/s/ Toni Michelle Jackson_____
Toni Michelle Jackson [475653]
Interim Chief, General Litigation, Section III
Civil Litigation Division

__/s/ Kerslyn D. Featherstone _____
KERSLYN D. FEATHERSTONE [422968]
Assistant Attorney General
441 4th Street, N.W.
6th Floor South
Washington, D.C. 20001
P(202) 724-6600
F(202) 727-3625

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

KHALED M. RASHAD,         :
         :
   **Plaintiff,**       :
         :   **Case Number: 2007-cv-1673 (RMC)**
     **v.**       :   **Judge: Rosemary M. Collyer**
         :
**DISTRICT OF COLUMBIA,**    :
*et al.,*         :
         :
   **Defendants.**     :
_____:

### MEMORANDUM IN SUPPORT OF DEFENDANT'S
### MOTION TO DISMISS THE COMPLAINT OR, IN THE ALTERNATIVE
### FOR SUMMARY JUDGMENT

The defendant submits this memorandum of points and authorities in support of its Motion to Dismiss or, in the alternative for summary judgment because (1) plaintiff's claims are barred by his failure to exhaust his administrative remedies under the Prisoner Litigation Reform Act "PLRA"; and (2) plaintiff's claim for punitive damages are not available against the District of Columbia. Therefore, the complaint should be dismissed.

### RELEVANT FACTS

On September 21, 2007, plaintiff filed a complaint with this court alleging that "individuals at D.C. Jail [,] [the] U.S. Marshal Service, and CCA/CTF, caused [him] to lose valuable evidence in [his] case." *See* Complaint at Section V.   Moreover, plaintiff alleges that as a result of being transported out-of-state, he experienced unnecessary hardship trying to get back [to the District of Columbia] before his court date and that his phone rights were wrongfully violated. *Id.*   According to court records, the named defendants in plaintiff's complaint are the D.C. Central Detention Facility, U.S. Marshal

Service, and CCA Correctional Treatment Facility[1] ("CTF").  On November 1, 2007, plaintiff served the Office of the Attorney General for the District of Columbia.  On December 12, 2007, plaintiff served the Office of the Mayor.  Upon motion of the D.C. Central Detention Facility's Motion to Dismiss for non *sui juris*, this Court denied that motion; however, the court dismissed D.C. Central Detention Facility and *sua sponte* substituted the District of Columbia Government as a party to this action.  The court further ordered the clerk's office to issue a new summons and directed the U.S. Marshal's Service to serve the District of Columbia.  The District having been served on March 6, 2008, now submits this response.

## STANDARD OF REVIEW

In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted, a court must accept the allegations in the complaint as true. *See*, *e.g.*, *Croixland Properties Ltd. Partnership v. Corcoran*, 174 F.3d 213, 215 (D.C. Cir. 1999).

In a Rule 12(b)(6) analysis, while the complaint is to be construed liberally, courts "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept the legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). *See also Western Assoc. L.P. v. Market Square Assoc.*, 235 F.3d 629, 633 (D.C. Cir. 2001) ("The

---

[1] The Correctional Treatment Facility is privately operated by the Corrections Corporation of America on behalf of the District of Columbia and is an entity that can be individually sued. *See Moore v. Gaither*, 767 A.2d 278, 279 (D.C. 2001).

court assumes that the factual allegations in the complaint are true, but it is not bound by the complaint's legal conclusions.").

"[A] *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Williams v. Moore*, 899 F.Supp. 711, 712 (D.D.C. 1995) (quoting *Henthorn v. Department of the Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)).

The Supreme Court, has clarified the standard by which a complaint challenged by a Rule 12(b)(6) motion must be judged. In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Court held that, while a complaint so attacked "does not need detailed factual allegations, [it] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Slip op.* at 8 (citing, *inter alia*, *Papasan*).

The *Twombly* Court specifically disavowed *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), which innumerable courts have cited over the decades for the proposition that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*'s "no set of facts language has been questioned, criticized, and explained away long enough. [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic*, *supra*, at 1959-60.

More specifically, the Court noted that, for a complaint to survive a Rule 12(b)(6) motion to dismiss, there must be a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim." *Id*. at n.8 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)).

Here, the Complaint fails to meet even this minimal standard. "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atlantic*, *supra* at 8.

Similar to the Courts' analysis on a motion to dismiss, summary judgment may be granted for a moving party when it shows that there are no material facts in dispute and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hussain v. Prinicipi*, 344 F. Supp. 2d 86, 94 (D.D.C. 2004). "In considering a motion for summary judgment, the 'evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Hussain*, 344 F. Supp. 2d at 94 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, (1986)).

A party may rely on evidence outside of the pleadings to support his motion for summary judgment. Fed. R. Civ. P. 56(a) (allowing claimant to rely on supporting affidavits). Should the Court consider the evidence outside of the pleadings, this Motion to Dismiss will convert to a motion for summary judgment. Fed. R. Civ. P. 12(b); *Herron v. Veneman*, 305 F. Supp. 2d 64, 70 (D.D.C. 2004) ("Often the introduction of factual materials by the parties—including depositions, answers to interrogatories, admissions on file and affidavits—will convert a Rule 12(b)(6) motion to dismiss to a Rule 56(b) motion for summary judgment.").

**ARGUMENT**

**A.**    **PLAINTIFF'S FEDERAL CLAIMS ARE BARRED BY HIS FAILURE TO EXHAUST HIS ADMINISTRATIVE REMEDIES UNDER THE PRISONER LITIGATION REFORM ACT "PLRA".**

Plaintiff's claims that his constitutional rights were violated when (1) the District improperly destroyed his property and (2) his phone privileges were violated. *See* Complaint at Section V.  Both claims are barred based on his failure to exhaust his administrative remedies as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997(e)(a).

Section 1997e(a) provides that:

No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The Supreme Court has observed that an inmate's use of inmate grievance procedures helps to "reduce the quantity and improve the quality" of prisoner litigation by filtering out some claims and facilitating the development of a factual record for claims that do wind up in litigation.  *Porter v. Nussle*, 534 U.S. 516, 524-5 (2002).   The Supreme Court has also noted that allowing prison officials the chance to address inmates' complaints helps to remedy issues as they occur.  Hence, that Court noted that "corrective action taken [by prison officials] in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation."  *Id.*, accord *Booth v. Churner*, 532 U.S. 731, 737 (2001).

In *Jackson v. District of Columbia*, 254 F.3d 262 (D.C. Cir. 2001),  the Court of Appeals for the D.C. Circuit affirmed the lower court's dismissal of an inmate's federal

claims holding that "prisoners may only file actions under federal law concerning their conditions of confinement after they have exhausted their prison's administrative remedies." The court based its decision on the purpose of the PLRA: to "reliev[e] courts of the burden of lawsuits filed before prison officials have had an opportunity to resolve prisoner grievances on their own." *Id.* at 18-19. A prisoner must complete the administrative process, "regardless of the relief offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001).

The Supreme Court has held that this requirement "applies to all inmate suits about prison life, whether they involve general circumstances or a particular episode, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In this case, plaintiff seeks compensation because of how he believed his property was handled by the jail and that his phone privileges were violated   It is, however, well established that the destruction of an inmate's property is a "condition of confinement" within the meaning of the PLRA and therefore plaintiff was required to exhaust his "available" administrative remedies. *McGrath v. Johnson,* 67 F.Supp.2d 499, 510 (E.D. Pa. 1999) (citiing, Bradford v. Moore, 156 F.3d 1228 (6th Cir. 1998)) (destruction of property, tainting of food, sexual harassment are considered "conditions of confinement" for purposes of the PLRA.)

Below, the defendant demonstrates that there was an inmate grievance procedure in place at the DC Jail, and that plaintiff filed this lawsuit without fully exhausting all of his administrative remedies on both claims.

**a.** **The Department of Corrections Has Administrative Procedures For Inmate Grievances.**

If an inmate, held in a District Department of Corrections ("DCDC") facility, wants to file a grievance, he would first be encouraged to resolve the matter informally. *See* Exh. 1, Inmate Grievance Procedure ("IGP") 5(b). The procedure for inmates to file a grievance is as follows: If the matter is not resolved informally, the inmate could then file a formal grievance form (IGP Form 1). Exh. 1, IGP 14(b)(1). The inmate has 15 days from the time of the incident to file the IGP form. Exh. 1, IGP 15(a)(1). Each grievance must pertain to one specific incident, charge, or complaint. Exh. 1, IGP 149(b)(3). The Inmate Grievance Procedure Coordinator ("IGP Coordinator") will process and investigate the inmate's grievance pursuant to the IGP. Exh. 1, IGP 15(b) – (e). The inmate will be notified of the Warden's decision. Exh. 1, IGP 15(e)(4).

If the inmate wishes to appeal the decision of the Warden, he has five (5) days to send IGP Form 2 to the Deputy Director, accompanied with the original grievance and response. Exh. 1, IGP 16(a)(2). The Deputy Director must respond to the appeal within twenty-one (21) days. Exh. 1, IGP 16(a)(3).

If the inmate wishes to appeal the Deputy Director's decision, he must make his final appeal to the Director within five (5) days of the response, using IGP form 4. This filing must be accompanied by the original grievance and response and the appeal and response. Exh. 1, IGP 16(d)(1). The Director has twenty-one (21) days to respond to the inmate's appeal. . Exh. 1, IGP 16(d)(3).

Inmates are expected to use the administrative procedures in the prison system before resorting to litigation to resolve any dispute. Exh. 1, IGP 5(d).

An explanation of the administrative procedures is provided to inmates upon arrival at a detention facility and inmates can ask questions about the procedure. Exh. 1, IGP 11(b).  Furthermore, the grievance procedures are posted on bulletin boards in the prison and in inmate publications. Exh. 1, IGP 11(c).

**b.  Plaintiff Failed To Exhaust His Remedies Under The IGP Procedure.**

Under the IGP described above, the final appeal is to the Director of the Department of Corrections.  In the attached affidavit, Sallie Thomas, the Acting Executive Assistant to the Director, indicates that she has searched the electronic records of incoming correspondence for the Director for 2007 and did not find any incoming correspondence from plaintiff.  *See* Exh. 2. Accordingly, plaintiff has not exhausted his administrative options, because he did not appeal to the Director, the last step.  Therefore, he may not bring this federal lawsuit on any claims regarding his conditions of confinement, including his clams of destruction of his property and denial of phone privileges.  Accordingly, plaintiff's federal claims regarding the alleged destruction of property and denial of phone privileges while at the D.C. Jail must be dismissed.

**c.  Any Inmate Grievance Regarding The Conditions Of Confinement At CTF Must Be Grieved Through The Procedures Of That Facility.**

Because plaintiff was housed initially at CTF, prior to his move to Philadelphia, PA and was only at the D.C. Jail shortly before his move, it does not appear that he has exhausted his administrative remedies regarding the safekeeping of his property with respect to that institution.

Pursuant to the IGP, plaintiff must exhaust all remedies in that facility, including formal and informal resolution efforts.  Exh. 1, IGP 16(b)(1).  The CTF is a privately operated facility by the Corrections Corporation of America.

It is unclear from plaintiff's complaint where he alleges the destruction of property took place. Nevertheless, all final appeals must be made to the Director of the Department of Corrections. Again, in this case, no appeal was made by plaintiff to the Director. *See* Exh. 2. Therefore, plaintiff's complaint must be dismissed.

**B.**     **PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES IS NOT AVAILABLE AGAINST THE DISTRICT OF COLUMBIA**.

In his compliant, plaintiff seeks punitive damages from the District. *See* Complaint at 5, ¶VI. However, Plaintiff cannot recover exemplary (punitive) damages from the District of Columbia as a matter of law. Punitive damages are not available against the District of Columbia unless expressly mandated by statute, or in "extraordinary circumstances." *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *Butera v. District of Columbia,* 344 U.S. App. D.C. 265 (D.C. Cir. 2001); *Smith v. District of Columbia*, 336 A.2d 831, 832 (D.C. 1975).

The D.C. Circuit has interpreted "extraordinary circumstances" to include situations "where a jurisdiction's taxpayers are directly responsible for perpetrating the policies that caused [a] plaintiff's injuries," or where "a municipality or its policymakers have intentionally adopted [an] unconstitutional policy that caused the damages in question*." Daskalea v. District of Columbia*, 261, 227 F.3d 433, 447 (D.C. Cir. 2000); *see also Butera v. District of Columbia*, 235 F.3d at 658.

Plaintiff neither cites any statutory authority for his claim of punitive damages, nor does he plead facts that constitute "extraordinary circumstances." Therefore, plaintiff's complaint seeking punitive damages from the District of Columbia should be dismissed.

## CONCLUSION

**WHEREFORE**, for the foregoing reasons, defendant respectfully requests that this Honorable Court dismiss the complaint against the District of Columbia with prejudice.


Date: March 26, 2008


                                    Respectfully submitted,

                                    PETER J. NICKLES
                                    Interim Attorney General for the District of
                                    Columbia

                                    GEORGE C. VALENTINE
                                    Deputy Attorney General
                                    Civil Litigation Division


                                    ____/s/ Toni Michelle Jackson_____
                                    Toni Michelle Jackson [453765]
                                    Interim Chief, General Litigation, Section III
                                    Civil Litigation Division


                                    ___/s/  Kerslyn D. Featherstone_____
                                    KERSLYN D. FEATHERSTONE [422968]
                                    Assistant Attorney General
                                    441 4th Street, N.W.
                                    6th Floor South
                                    Washington, D.C. 20001
                                    P(202) 724-6600
                                    F(202) 727-3625

# UNITED STATES DISTRICT COURT FOR
# THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KHALED M. RASHAD,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case Number: 2007-cv-1673 (RMC)** |
| vi. | : | **Judge: Rosemary M. Collyer** |
| | : | |
| **DISTRICT OF COLUMBIA,** | : | |
| *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| _____: | | |

## ORDER

Upon consideration of the District of Columbia's Motion to Dismiss or, in the

Alternative for Summary Judgment, any opposition thereto, and the entire record herein,

it is this _____ day of _____, 2008, hereby:

**ORDERED**: that District of Columbia's Motion to Dismiss is **GRANTED**; and it

is

**FURTHER ORDERED**: that all claims against District of Columbia are

**DISMISSED**, with prejudice.

**SO ORDERED.**


_____
The Honorable **Rosemary M. Collyer**
Judge, U.S. District Court for the District of
Columbia

13

Copies to:
Kerslyn D. Featherstone
Assistant Attorney General
441 4th Street, N.W., Suite 600-S
Washington, DC  20001

Khaled M. Rashad
DC#312227 CTF
1901 E Street, S.E.
Washington, DC  20003

# DISTRICT OF COLUMBIA
# DEPARTMENT OF CORRECTIONS



# Program Statement

**OPI:** DIR
**Number:** 4030.1E
**Date:** July 1, 2004
**Subject:** Inmate Grievance Procedures (IGP)

1. **PURPOSE AND SCOPE.** To update administrative procedures through which inmates of the District of Columbia Department of Corrections (DOC) may seek formal redress of their grievances.

2. **POLICY.** It is DOC policy to provide an administrative means for expression and resolution of inmate problems through written complaints, responses and appeal.

3. **APPLICABILITY**

   a. This Program Statement (PS) applies to persons housed in correctional facilities operated under the authority of the DOC.

   b. Inmates housed in contract prison facilities shall use the contractor's grievance process, noting the contractor to be responsible for day-to-day operations within the affected facility. Inmates housed in contract prison facilities shall only file a grievance with the DOC when grievance appeal steps within the contractor's grievance process have been exhausted.

4. **NOTICE OF NON-DISCRIMINATION**

   a. In accordance with the D.C. Human Rights Act of 1977, as amended, D.C. Code section 2.1401.01 et seq. ("the Act") the District of Columbia does not discriminate on the basis of race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, familial status, family responsibilities, matriculation, political affiliation, disability, source of income, or place of residence, or business. Discrimination in violation of the Act will not be tolerated. Violators will be subject to disciplinary action.

   b. DOC prohibits discrimination regarding administrative decisions or program access for inmates.

5. **PROGRAM OBJECTIVES.** The expected results of this program are:

   a. Staff is available to counsel inmates on request.

b.  Inmate grievances will be resolved through formal procedures when informal means have failed.

c.  Written responses based upon full investigation and resolution when appropriate including the reasons for the decision shall be given to all inmate grievances within the prescribed time limits.

d.  Inmates will use this procedure and pursue claims in court only if dissatisfied with resolutions obtained from the IGP.

6.  **DIRECTIVES AFFECTED**

a.  **Directive Rescinded**

D.O. 4030.1D     Inmate Grievance Procedure (IGP) (5/4/92)

b.  **Directives Referenced**

1)  PS 2000.2          Retention and Disposal of Department Records (4/6/01)

2)  DO 3350.2C         Sexual Misconduct Against Inmates (12/10/98)

3)  PS 3800.3          Communications for Deaf and Hearing Impaired (9/30/03)

4)  PS  4020.1B        Orientation Program (7/1/04)

5)  PS 4022.1A         Community Correctional Centers Disciplinary Procedures (8/13/02)

6)  SO 5300.1C         Adjustment Board Procedures Detention Services (8/1/04)

7)  PS 4020.1A         Admission and Orientation Program (9/21/00)

8)  PS 4090. 2         Intake Screening (7/1/04)

9)  CA 93-2052         Women Prisoners of DCDC v. DC (6/17/97)

7.  **AUTHORITY.**  DC Code §24-211.02 Powers: Promulgation of Rules

8.  **STANDARDS REFERENCED**

American Correctional Association (ACA) 4th Edition Standards for Adult Local Detention Facilities 4-ALDF-2A-27, 4-ALDF-6B-01 and 4-ALDF-6B-02.

9.   **DEFINITIONS.**  For the purpose of this Program Statement (PS), the following
     definitions apply:

   a.   **Grievance** – An administrative means for the expression and resolution of
        inmate/offender problems.

   b.   **Non-Grievance Issues.**  In accordance with this directive the following issues
        cannot be grieved under this process:

        1)   Parole Commission decisions,
        2)   Decisions of the Adjustment or Housing Boards
        3)   Classification Committee decisions,
        4)   Requests under Freedom of Information Act,
        5)   Inmate Accident Claims, Tort Claims, and
        6)   Complaints filed on behalf of other inmates.
        7)   Inmate class action grievances or petitions

   c.   **Reprisal** – Any overt or covert action or threat of action against an inmate/offender
        for the good faith use of, or participation in, the inmate grievance process.

   d.   **Correctional Facilities**  - Any DOC institution, either contracted or owned by the
        DOC that houses adult inmates/offenders in a halfway house or jail.

10.  **RESPONSIBILITIES**

   a.   This directive shall be implemented under the authority of the DOC Director.

   b.   Wardens and the Community Residential Programs (CRP) Administrator shall
        ensure that an appropriate investigation is conducted and an adequate response
        is prepared for each grievance in accordance with the procedures set forth in this
        directive.

   c.   Each facility shall maintain a sufficient supply of Inmate Request Slips for use in
        addressing informal complaints.

   d.   Each facility shall maintain a sufficient supply of IGP forms for formal resolution.

   e.   Each Housing Unit and Community Correctional Center (CCC) shall ensure that
        sufficient forms are available and accessible on the unit during his or her tour of
        duty.

   f.   The IGP shall be available to inmates regardless of any disciplinary, classification,
        or other administrative or legal conditions affecting them.

g.    Employees shall not retaliate or allow other inmates to retaliate against an inmate/offender for participation in the Inmate Grievance Procedure.

11.   **INMATE/OFFENDER NOTIFICATION**

a.    The Warden or the Community Residential Programs (CRP) Administrator shall ensure that this PS and any other written directives pertaining to the Inmate Grievance Procedure (IGP) are readily available to all inmates housed in DOC correctional facilities.

b.    An orientation of the inmate/offender grievance procedure shall also be provided to each inmate/offender upon arrival at a correctional facility.  During orientation each inmate/offender shall be given the opportunity to ask questions concerning the IGP and given an opportunity to have these questions answered orally.

c.    This PS shall be made readily available in the law library and case manager offices, posted on inmate/offender bulletin boards and, as appropriate, shall be described in inmate/offender handbooks.

d.    Female inmates/offenders shall be advised of the provisions of CA 93-2052 Women Prisoners v. DC and DO 3350.2C Sexual Misconduct Against Inmates (12/10/98), allowing them to through the inmate grievance form or notice to an employee or inmate representative on the Inmate Grievance Advisory Committee (IGAC) to report verbally or in writing instances of sexual harassment.

e.    The Warden shall ensure that non-English speaking inmates, inmates who cannot read or are otherwise impaired (physically or mentally), receive assistance in order to understand and access the IGP.

12.   **STAFF NOTIFICATION/TRAINING**

a.    The Deputy Director for Operations and CRP Administrator shall ensure that this PS and any other written directives pertaining to the IGP shall be made available to all staff assigned to correctional institutions.

b.    The Department's Training Academy shall include a discussion of the IGP PS as part of its Pre-service and In-service training curriculum for employees.

c.    Staff members shall have an opportunity to ask questions regarding the IGP and will be given an opportunity to have these questions answered orally.

d.    The Training Administrator shall maintain the signed acknowledgements on file.

## 13.   INMATE GRIEVANCE PROCEDURE (IGP) COORDINATOR

a.   The Warden and the CRP Administrator shall appoint an IGP Coordinator who shall:

1)   Coordinate activities and operations associated with IGP retrieval, distribution, tracking, database entry, monitoring and establishment of resolution suspense dates.

2)   The CDF IGP Coordinator or designee shall collect grievances from each housing unit 'IGP" mailbox on a daily basis (excluding Saturdays, Sundays and legal holidays).

3)   Maintain the JACCS electronic data input and tracking.

4)   Apprise the affected Warden or CRP Administrator on the next business day when suspense dates are not met.

5)   If the inmate/offender is transferred to another facility under the jurisdiction of or contract with DOC, the IGP Coordinator shall forward the response to the IGP Coordinator at the affected facility.

6)   The IGP Coordinator where the inmate is located shall ensure that the response is forwarded to the inmate/offender and a copy placed in the inmate's official institutional record.

b.   The Director and Deputy Director shall assign staff to perform the above stated duties at the respective appeal levels.

## 14.   GRIEVANCE PROCESS

a.   **Informal Resolution**

1)   Executive staff, Chief Case Managers, Case Managers, Correctional Supervisors, Correctional Counselors and Housing Unit Officers shall make every attempt to keep the channels of communication open between staff and inmates/ offenders and shall informally resolve issues expeditiously whenever possible.

2)   Whenever an inmate/offender has a dispute or complaint, the inmate/offender should, whenever appropriate and possible, first seek to resolve this situation informally by completing an Inmate Request Slip or verbally notifying and discussing the complaint with the relevant parties or an appropriate DOC employee or manager.

3)   Inmate Request Slips, for the purpose of informal resolution, shall be placed in the institutional or CCC mailbox and not in the IGP mailbox.

4)   The staff person receiving the initial complaint shall discuss and document his or her efforts to informally resolve the complaint at this level within 7 calendar days.

b.   **Formal Resolution**

1.)  Whenever an inmate/offender has not been able to resolve a complaint through informal means, he or she may file a formal grievance by completing an IGP Form 1 (Attachment A).

2)   DOC also strictly prohibits reprisals against inmates/offenders for the good faith filing of grievances or legal actions. Inmates who believe they have been subjected to reprisals for using the IGP may submit a subsequent grievance seeking a remedy.

3)   The inmate/offender must attach documentation of efforts to reach informal resolution. Each grievance must pertain to one specific incident, charge or complaint.

4)   Inmates/offenders shall not submit duplicate copies of the same grievance.

5)   Inmates may request IGP Forms from any staff member who is assigned to his or her housing unit and the affected staff member shall ensure that inmates who request an IGP Form are provided a form during his or her shift or tour of duty.

6)   If an IGP Form 1 cannot be obtained, an inmate/offender may submit his or her grievance on standard, letter-sized paper. This grievance should contain the following information:

   a)   The name and DOC number of inmate/offender filing the grievance;

   b)   The name of the institution or community correctional center where the inmate/offender is housed;

   c)   The nature of the complaint or grievance, date of occurrence, and the remedy sought;

   d)   The inmate/offender's signature; and

   e)   Date.

7) Whenever a grievance does not receive a response within the prescribed response time as established in this PS:

    a) The inmate/offender may attach a copy of the grievance to the IGP Form 2 or 3 as is appropriate and forward it to the next step in the grievance process for response.

    b) An inmate/ offender may waive this right if he or she has agreed in writing to an extension of the allowable response time.

    c) The specific length of the extension shall also be stated in writing.

8) An inmate/offender's failure to adhere to any of the prescribed requirements of this PS can result in a grievance being dismissed. However, if an inmate/offender can provide and explanation why they do not have a receipt or if they are appealing to the next level due to no response within the time limit allotted and is without a decision for the level below, these irregularities will be excused.

9) Complaints listed as non-grievance issues shall also be dismissed.

## 15. PROCEDURES FOR FILING AN INMATE/OFFENDER GRIEVANCE

### a. Inmates at CDF

1) Each formal grievance must be filed within 15 calendar days of the incident that precipitates the filing of a grievance or within 15 days when the inmate/offender became knowledgeable of the incident that he or she believes has cause for filing of a grievance.

2) Inmates/offenders shall use Blue IGP Form 1 (Attachment A) to file a grievance. If an IGP Form 1 cannot be obtained, an inmate/offender may submit the grievance on standard, letter-sized paper.

3) A secured IGP collection box shall be placed in a location accessible to all inmates. The inmate/offender shall place the IGP form in the locked box marked "GRIEVANCES."

4) Inmates housed in segregation units shall deposit the IGP form in the locked box marked "GRIEVANCES" during their individual recreation time. An inmate in this status may also submit the IGP to their assigned case manager or a supervisor, having first placed the IGP form in a sealed envelope. The case manager or supervisor shall then place the IGP form in the locked box marked "GRIEVANCES".

b.    Community Correctional Center

    1)    Inmates/offenders housed in contract halfway houses shall exhaust all provided remedies in the affected facility to include formal and informal resolution efforts.

    2)    Inmates/offenders housed in contract halfway houses may file an IGP with the DOC Community Residential Programs (CRP) Administrator

    3)    Offenders who are housed in a contract halfway house shall submit the IGP to the DOC Community Residential Administrator.

c.    **IGP Coordinator**

    1)    The IGP Coordinator or designee shall collect grievances from each CDF housing unit locked grievance box daily, Monday through Friday.

    2)    The CRP Administrator or designee shall receive IGPs through the mail.

    3)    The IGP Coordinator shall inform the inmate/offender in writing of the appropriate administrative procedure if the request or appeal is not acceptable under the IGP.

    4)    The IGP Coordinator shall generate the inmate/offender receipt using the Crystal Report "G – IGP Grievance Receipt" (Attachment B).

    5)    The IGP Coordinator shall forward the inmate/offender receipt via the institutional mail.

    6)    The IGP Coordinator shall input required complaint data into the JACCS "Grievance" Data Entry Screen (See Attachment C) to include:

        a)    Grievance Entry Information - The IGP Codes (Attachment D) shall be used for the JACCS Grievance Type code to indicate the subject of the complaint in order to permit efficient reporting, tracking and monitoring of all inmate/offender complaints, on all IGP logs and reports.

        b)    Submitted for Review Information

        c)    Referred to Investigation

        d)    Extension of Time requested and new date for response if the inmate/offender consents

        e)    Finding Response

        f)    Final Appeal Ruling (when applicable)

7)  The IGP Coordinator shall scan the IGP document image into JACCS.

8)  The IGP Coordinator shall then forward the complaint to the appropriate manager for investigation and resolution, along with a photocopy to the affected Warden.

d.  **Investigation**

1)  Staff who are implicated or involved in a grievance are prohibited from investigating that grievance.

2)  The manager shall impartially investigate the complaint and make every effort for reasonable resolution. Resolution may result in a further assessment and improvement of management or operational controls.

3)  Inmates/offenders may not participate in the resolution of an inmate's/offender's grievance.

e.  **Response to IGP**

1)  The manager shall provide a written response in memorandum format via the IGP Coordinator to inmate/offender grievances within 21 calendar days following receipt of the grievance.

2)  The affected Warden shall review and approve/disapprove or otherwise revise the response.

3)  Inmates/offenders shall be provided with written justification for any decision that is rendered on their grievance or grievance appeal.

4)  Upon satisfactory completion of the complaint resolution, the Warden shall return the IGP to the IGP Coordinator for distribution to the inmate.

5)  In any instance when the IGP Coordinator, in consultation with the affected Warden and the investigating manager, determines that a sufficient response to a grievance cannot be rendered within the prescribed time limitation, the following conditions apply:

a)  The affected inmate/offender must be notified in writing of the need for the extension and of the specific length of the extension.

b)  The inmate/offender must agree in writing to the extension.

c)  Otherwise, when a grievance does not receive a response within the prescribed response time, as established in this PS, the

inmate/offender may proceed to the next step in the grievance procedure.

16. **PROCEDURES FOR FILING AN APPEAL**

a. **Central Detention Facility**

1) If an inmate housed at the CDF is not satisfied with the Warden's response to a grievance, he or she may file an appeal to the Deputy Director.

2) This appeal shall be filed within 5 calendar days of receipt of the grievance response from the Warden, using Green IGP Form 3 (Attachment F). The appeal shall be accompanied by a copy of the original grievance and the Warden's response and supporting documentation. If an IGP Form 3 cannot be obtained, an inmate/offender may submit the grievance on standard letter-size paper.

3) The Deputy Director shall respond to an appeal within 21 calendar days following its receipt.

b. **Corrections Corporation of America Correctional Treatment Facility**

1) Inmates/offenders housed in the CTF shall exhaust all provided remedies in the affected facility to include formal and informal resolution efforts.

2) The CCA Warden shall ensure that sufficient grievance and appeal forms are available on the housing units at the CTF.

3) If the inmate/offender is not satisfied with his or her response from the CTF Warden he or she may file an appeal to the Deputy Director within 5 calendar days, using Green IGP Form 2 (Attachment F) or plain letter-size paper. If an IGP Form 2 cannot be obtained, an inmate/offender may submit the grievance on standard letter-size paper. This appeal must be accompanied by copies of the original grievance and responses, and appropriate support documentation, from the CCA/CTF Warden.

4) The Deputy Director or designee shall investigate and respond to the appeal within 21 calendar days following its receipt.

c. **Contract Community Correctional Center**

1) If an inmate/offender housed in a contract community correctional center is not satisfied with his or her response from the CRP Administrator he or she may file an appeal to the Deputy Director within 5 calendar days, using Pink IGP Form 2 (Attachment E). If an IGP Form 3 cannot be obtained, an

inmate/offender may submit the grievance on standard letter-size paper. This appeal must be accompanied by copies of the original grievance and responses, and appropriate support documentation, from the CRP Administrator.

2)    The Deputy Director or designee shall respond to the appeal within 21 calendar days following its receipt.

d.    **Appeals Process – Final Level**

1)    As a final appeal, an inmate/offender housed in a correctional facility under the jurisdiction of or contract with DOC, who is dissatisfied with an appeal decision rendered by the Deputy Director may submit his or her grievance to the Director within 5 calendar days following the receipt of a grievance appeal response.

2)    The Yellow IGP Form 4 (Attachment G) shall be used for filing an appeal to the Director.  Appeals to the Director must be accompanied by the original grievance along with the corresponding responses. If an IGP Form 4 cannot be obtained, an inmate/offender may submit the grievance on standard letter-size paper.

3)    The Director shall respond to an inmate's/offender's appeal within 21 calendar days following its receipt.

4)    The Director shall be the final level of appeal for each inmate/offender who files a Grievance within the DOC Inmate Grievance Procedure.

17.    **PROCEDURES FOR FILING AN EMERGENCY GRIEVANCE**

a.    Emergency grievances shall be defined as matters in which an inmate/offender would be subjected to substantial risk of personal injury, or serious and irreparable harm, if the inmate/offender filed the grievance in the routine manner with the normally allowed response time.

b.    The inmate/offender must prominently label and identify the grievance as an "Emergency Grievance" at the top of the IGP Form 1 and state the nature of the emergency.

c.    The inmate/offender shall file the emergency grievance in a sealed envelope; also marking it as an emergency grievance.  The inmate/offender shall address his or her Emergency Grievance to the lowest administrative level at which an appropriate remedy can be achieved (i.e., CRP Administrator, Warden, or Director).

d.  If an inmate's/offender's grievance is of a sensitive nature and he/she has reason to believe that he/she would be adversely affected if it was to become known at the institutional level, he/she may file the grievance directly with the Director. All such Emergency Grievances may be forwarded via the regular institutional mail.

e.  The IGP Coordinator shall immediately review and consult with the Warden, or Administration/CRP Administrator to determine if the complaint is of an emergency nature as defined in this directive.

f.  The inmate shall be informed if the grievance is not accepted as an emergency grievance and that the grievance shall be treated as a regular grievance.

g.  The following special provisions shall apply to Emergency Grievances:

   1)  An emergency grievance shall be responded to within 72 hours of its receipt.

   2)  Within 48 hours of receiving a response to the emergency grievance, an inmate/offender may appeal to the next level of the IGP appeal process.

## 18. REPORTING

a.  Each IGP Coordinator shall print the Crystal Report "G – IGP Complaint Log" (Attachment H) that records all formal grievances entered in JACCS under the IGP. Not later than the 10th day of each month, a copy of this log, reflecting grievances filed during the previous month, shall be forwarded through the affected Deputy Director.

b.  Each DOC official who renders a decision on an Inmate Grievance Appeal shall print the Crystal Report "G – IGP Appeal Log" (Attachment I) that records all appeals entered in JACCS under the IGP. Not later than the 10th day of each month, a copy of this log, that reflects appeals filed during the previous month, shall be forwarded through the affected Deputy Director to the Director.

c.  The IGP Coordinator shall print the Crystal Report "G – Unresolved Grievance Log" (Attachment J) that tracks and monitors the progress of grievances remaining unresolved more than 22 days after receipt. Not later than the tenth 10th day of each month, a copy of this log, which reflects all unresolved grievances, shall be forwarded through the affected Deputy Director to the Director.

d.  All records, logs, and reports that pertain to an inmate/offender grievance shall be maintained in accordance with the DOC Records Retention and Disposal Schedule.

19.  **EVALUATION**

a.  **Internal Program Review.**  When managers determine that the results of an inmate/offender grievance point to systemic deficiencies, appropriate improvements shall be taken. Improvements may include recommendations for procedural changes to correct systemic problems, refresher training, counseling or discipline when the investigation findings clearly point to this as the appropriate action.

b.  **Annual Statistical Summary Report.**  The Office of Management Information and Technology Services shall maintain the database and provide an annual statistical summary of the DOC IGP and submit it to the Director and the Office of Internal Controls, Compliance and Accreditation.  This summary shall be provided by the 21st day of October for the preceding fiscal year.

c.  At a minimum, the reviews described above, shall include assessments of the following operational factors:

1)  Compliance with Response Time – An assessment to determine if inmate grievances are responded to within the prescribed time periods.

2)  Availability of Forms – A determination of the accessibility and availability of the forms used to submit grievances.

3)  Response to Grievances – An analysis to determine if appropriate responses and remedies are being provided in response to grievances.

4)  Credibility of the System – An assessment of inmate knowledge of, satisfaction with, and confidence in the IGP.

5)  Conclusions and Recommendations – An evaluation of the data generated through the IGP process (i.e., number of grievances, types of grievances filed, number and types of grievances by institutions).  This data shall be used to develop specific conclusions and recommendations regarding Department operations and the DOC IGP.

d.  **Senior Executive Review.**   The designated senior executive manager assigned to evaluate the IGP process shall conduct not less than annual audits and monitor compliance at subsequent reviews.

e.  **Risk Management.**  The Risk Manager shall review crystal reports and annual audits and in conjunction with the Warden determine plans of action where warranted to improve safety, quality and program performance.

20.  **CONFIDENTIALITY**

Records concerning an individual's participation in the IGP are considered confidential.
These records shall be made available in accordance with the established procedures
for confidential records and information, as contained in the D. C. Freedom of
Information Act.

Odie Washington
Director

**ATTACHMENTS**

A.    Blue IGP Form 1 (Administrative Remedy to Warden/CRP Administrator)
B.    Crystal Report – "IGP Grievance Receipt"
C.    JACCS Grievance Data Entry Screen
D.    Grievance Codes
E.    Pink IGP Form 2 (CCC Inmate Appeal to Deputy Director)
F.    Green IGP Form 3 (CDF and CCA/CTF Inmate Appeal to Deputy Director)
G.    Yellow IGP Form 4 (Appeal to Director)
H.    Crystal Report - Monthly IGP Complaint Log (IGP Form 6)
I.    Crystal Report - Monthly IGP Appeal Log (IGP Form 7)
J.    Crystal Report - Unresolved IGP Log (IGP Form 8)

Warden's Request for Administrative Remedy

PS 4030.1E
July 1, 2004
Attachment A

District of Columbia
**Department of Corrections**
IGP Form 1 (Rev 7/1/04)

___

...e or use ballpoint pen.  If additional space is needed, attach an original and three copies.
...P Form 1 may be used until supply exhausted.

**From:** _____    _____    _____    _____
                  LAST NAME, FIRST NAME, MIDDLE INITIAL              DCDC No.         CELL/BLOCK No.           FACILITY

**PART A – INMATE REQUEST**




_____                          _____
              DATE                                                                 SIGNATURE OF INMATE/OFFENDER

**PART B – RESPONSE**




_____    _____    _____    _____
        DATE                 IGP No.          COMPLIANT TYPE CODE            SIGNATURE OF WARDEN/ADMINISTRATOR

**BLUE FORM**

...ginal – Inmate/Offender
Copy Warden
Copy Inmate/Offender File

# DC Department of Corrections

## Inmate Greivance Receipt



PS 4031.F
7/01/2004
Attachment B

Grievant's Last Name, First Name, Middle Name

DCDC#

Booking#

Institution

Housing Unit

IGP Date

IGP Number

IGP Code

**(type not specified)**

Subject of Complaint

Staff Recipient Name

Staff Recipient Signature

PS 4030.1E
July 1, 2004
Attachment D

# Inmate Grievance Codes
## (For use with monthly Inmate Grievance Procedure Logs)

| Code | Subject | Types of Complaints |
|---|---|---|
| 1 | Transfers | Complaints regarding transfers between correctional institutions only, this includes returns from Community Correctional Centers or Release Programs. |
| 2 | Programs | Complaints Regarding program activities, e.g., quality of, availability of, etc. |
| 3 | Communications | Complaints regarding visits, phone usage, mail. |
| 4 | Property | Complaints regarding personal property, i.e., loss, theft, or damage of property. |
| 5 | Case Management | Complaints regarding case management duties and responsibilities. |
| 6 | Sentence | Complaints regarding good time, sentence computation, detainers, jail time. |
| 7 | Medical | Complaints regarding health services, e.g., quality of treatment, availability of treatment, medicine, equipment, etc. |
| 8 | Inmate Finance | Complaints regarding inmate finance and canteen. |
| 9 | Transportation | Transportation complaints, this includes availability of staff/vehicles to transport persons to court, school, medical appointments, etc. |
| 10 | Food | Complaints regarding Food Services |
| 11 | Facilities Management | Complaints regarding sanitation and maintenance of buildings and ground. |
| 12 | Staff Treatment | Complaints regarding staff treatment. |
| 13 | Prison Regulations | Complaints regarding a Correctional Institutions' established policies, procedures, regulations. |
| 14 | Other | Complaints not included in the categories above. |

| Code | Disposition |
|---|---|
| + | Inmate's Remedy Granted |
| - | Inmate's Remedy Denied |
| o | Other Disposition (Please Specify) |

Community Residential Program Administrator IGP Appeal

District of Columbia
**Department of Corrections**
IGP Form 2 (Rev 7/1/04)

PS 4030.1E
July 1, 2004
Attachment E

___e or use ballpoint pen.  If additional space is needed, attach an original and three copies.
__P Form 2 may be used until supply exhausted.

From: _____

| LAST NAME, FIRST NAME, MIDDLE INITIAL | DCDC No. | CELL/BLOCK No. | FACILITY |

**PART A – REASON FOR APPEAL**


_____              _____
           DATE                              SIGNATURE OF INMATE/OFFENDER

**PART B – RESPONSE**


If dissatisfied with this response, you may appeal to the Deputy Director.  Your appeal must be forwarded to the Deputy Director within 5 work days.  To file an appeal, obtain an IGP Form 3 (or ARP Form 3) from your case manager and state your objections to this decision and forward a copy of this decision and any supporting documents you may have along with your appeal.

| DATE | IGP No. | COMPLIANT TYPE CODE | SIGNATURE OF WARDEN/ADMINISTRATOR |

Original – Inmate/Offender
Copy Warden
Copy Inmate/Offender File

**GREEN FORM**

Deputy Director IGP Appeal

PS 4030.1E
July 1, 2004
Attachment F

District of Columbia
Department of Corrections
IGP Form 3 (Rev 7/1/04)

~~e or use ballpoint pen.  If additional space is needed, attach an original and three copies.
.P Form 3 may be used until supply exhausted.

From: _____     _____     _____     _____
          LAST NAME, FIRST NAME, MIDDLE INITIAL          DCDC No.          CELL/BLOCK No.          FACILITY

PART A – REASON FOR APPEAL




_____                              _____
        DATE                                              SIGNATURE OF INMATE/OFFENDER

PART B – RESPONSE




If dissatisfied with this response, you may appeal to the Deputy Director.  Your appeal must be forwarded to the Deputy Director within 5 work
days.  To file an appeal, obtain an IGP Form 3 (or ARP Form 3) from your case manager and state your objections to this decision and forward
a copy of this decision and any supporting documents you may have along with your appeal.

_____     _____     _____     _____
        DATE                    IGP No.         COMPLIANT TYPE CODE              SIGNATURE OF WARDEN/ADMINISTRATOR

~ginal – Inmate/Offender                      **GREEN FORM**
Copy Warden
Copy Inmate/Offender File

Director's IGP Appeal

PS 4030.1E
July 1, 2004
Attachment G

District of Columbia
**Department of Corrections**
IGP Form 4 (Rev 7/1/04)

___ e or use ballpoint pen.  If additional space is needed, attach an original and three copies.
Form 4 may be used until supply exhausted.

From: _____   _____   _____   _____
      LAST NAME, FIRST NAME, MIDDLE INITIAL   DCDC No.   CELL/BLOCK No.   FACILITY

**PART A – REASON FOR APPEAL**

_____   _____
       DATE   SIGNATURE OF INMATE/OFFENDER

**PART B – RESPONSE**

This is the final level of review in the DC Department of Corrections.

_____   _____   _____   _____
    DATE   IGP No.   COMPLIANT TYPE CODE   SIGNATURE OF WARDEN/ADMINISTRATOR

___ nal – Inmate/Offender
Copy Warden
Copy Inmate/Offender File

**YELLOW FORM**

★ ★ ★

PS 4030.1E
7/01/2004
Attachment H

# DC Department of Corrections

## Inmate Greivance Procedure (IGP)
## Monthly Complaint Log

**2 July 2004 to 2 July 2004**
Period of Report

| IGP Number | Date Received | Inmate's Name (Last, First, Middle) | DCDC# | Booking# | Subject of Complaint | Code | Date | Remarks |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | Disposition | |
| 04-0702 | 07/02/2004 | TEST, BROWN | 291151 | 2001-12179 | PROGRAMS | 02 | | |

**Total# IGP Complaints Entered in  2 July 2004 to  2 July 2004:** <u>1</u>

lg
D:\Crystal Reports Templates\Published Reports\G - IGP Complaint Log.rpt

IGP Form 6 (42002)
Report printed: 7/2/04 10:58:39 am

PS 4030.1E
July 1, 2004
Attachment I

# DC Department of Corrections

## Inmate Grievance Procedure (IGP)

## Monthly Appeal Log

__2 July 2004 to 2 July 2004__
Period of Report

| IGP Number | Date Received | Inmate's Name (Last, First, Middle) | DCDC# | Booking# | Subject of Complaint | Code | Disposition Date | Remarks |
|---|---|---|---|---|---|---|---|---|
| 04-0702 | 07/02/2004 | TEST, BROWN | 291151 | 2001-12179 | PROGRAMS | 02 | | |

Total# IGP Complaints Entered in 2 July 2004 to 2 July 2004:     __1__



PS 4030.1E
7/01/2004
Attachment J

# DC Department of Corrections

## Inmate Greivance Procedure (IGP)
## Monthly Unresolved Grievance Log

Active Records in CDF Only

7/2/04 11:05 am
Date/Time of Report

| IGP Number | Date Received | Inmate's Name (Last, First, Middle) | DCDC# | Booking# | Subject of Complaint | Code | Date | Anticipated Date of Resolution Being Reviewed By |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

lg
D:\Crystal Reports Templates\Published Reports\Q - IGP Unresolved Grievance Log.rpt

IGP Form 8 (4/2002)

Report printed: 7/2/04 11:05:40 am

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

KHALED M. RASHAD,                          :
                                           :
    Plaintiff,                         :
                                           :    **Case Number: 2007-cv-1673 (RMC)**
           v.                    :    **Judge: Rosemary M. Collyer**
                                           :
DISTRICT OF COLUMBIA,                      :
*et al.,*                                  :
                                           :
    Defendants.                        :
_____           :

### AFFIDAVIT OF SALLIE THOMAS

I, SALLIE THOMAS, say the following:

1. I am over 18 years old.

2. I am presently employed as the Acting Executive Assistant to the Director of D.C. Department of Corrections.

3. As part of my job duties, I know how correspondence addressed to the Director of the Department of Corrections was handled during 2007.

4. During 2007, correspondence to the Director of the Department of Corrections was scanned into a computer system when it is received at the Office of the Director.

5. When a staff member is assigned to respond to the correspondence that information is recorded in the Department's computer system as well as any response generated.

6. The system can be searched to determine if any correspondence has been received from a particular person.

7. The scanned copies of the correspondence received and any response to the correspondence can then be printed.

8. I have searched the system for any correspondence from inmate Khaled Rashad.

9. I have discovered no record of a grievance appeal or correspondence from Khaled Rashad during calendar year 2007, or any record of any response to Khaled Rashad having been generated during that period.

10. Attached is Exhibit 1 is a copy of the Inmate Grievance Procedures in effect for the Department of Corrections during the year 2007.


I declare under penalty of perjury and the laws of the United States of America that the foregoing is true and correct.

Executed on this 26th day of March 2008.

Sallie D. Thomas

Sallie Thomas, Executive Assistant to the Director of the Department of Corrections

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **KHALED M. RASHAD,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case Number: 2007-cv-1673 (RMC)** |
| v. | : | **Judge: Rosemary M. Collyer** |
| | : | |
| **DISTRICT OF COLUMBIA,** | : | |
| *et al.,* | : | |
| | : | |
| **Defendants.** | : | |
| _____: | | |

## ORDER

Upon consideration of the District of Columbia's Motion to Dismiss or, in the

Alternative for Summary Judgment, any opposition thereto, and the entire record herein,

it is this _____ day of _____, 2008, hereby:

**ORDERED**: that District of Columbia's Motion to Dismiss is **GRANTED**; and it

is

**FURTHER ORDERED**: that all claims against District of Columbia are

**DISMISSED**, with prejudice.

**SO ORDERED.**

_____
The Honorable **Rosemary M. Collyer**
Judge, U.S. District Court for the District of
Columbia

Copies to:
Kerslyn D. Featherstone
Assistant Attorney General
441 4th Street, N.W., Suite 600-S
Washington, DC  20001

Khaled M. Rashad
DC#312227 CTF
1901 E Street, S.E.
Washington, DC  20003