UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| KHALED M. RASHAD, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 07-1673 (RMC) |
| D.C. CENTRAL DETENTION FACILITY, *et al.*, | : |
| Defendants. | : |

**MEMORANDUM OPINION**

This matter comes before the Court on the District of Columbia's motion for summary judgment and the United States Marshals Service's motion to dismiss. For the reasons stated below, the Court will grant both motions.

I.  BACKGROUND

It appears that plaintiff was housed at the District of Columbia's Correctional Treatment Facility ("CTF") in March 2007 and that he was taken to the District of Columbia Central Detention Facility ("D.C. Jail") immediately before he was transported in the custody of the United States Marshals Service ("USMS"), in error, first to the Federal Detention Center in Philadelphia, then to the Metropolitan Correctional Center in New York. Plaintiff alleges that the USMS deputies did not allow him to take his legal papers and personal property with him. For this reason plaintiff states that he directed staff to mail his property to a friend. He alleges that he was returned to the District of Columbia on April 4, 2007 and was housed at the D.C. Jail.

According to plaintiff, "individuals at the D.C. Jail and [USMS] and [CTF]

1

c[a]used [him] to lose valuable evidence in [his] case." Compl. at 5 (page number designated by the Court). The loss of his property, he alleged, caused him "to experience painful, unnecessary hardship trying to get [it] back before [his] court date." *Id.* In addition, he alleged that his "phone rights was [sic] wrongfully violated." *Id.* For these harms, he demands monetary damages of $75,000 plus punitive damages of $375,000. *Id.*

## II. DISCUSSION

### A. District of Columbia's Motion for Summary Judgment

The District of Columbia argues that plaintiff's claims are barred because he failed to exhaust his administrative remedies before filing this action. *See* Defendant District of Columbia's motion to Dismiss the Complaint or, in the Alternative for Summary Judgment ("D.C. Mot. ") at 7-11. Because the District provides and the Court considers matters outside of the pleadings, the Court treats the motion as a motion for summary judgment. *See Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (per curiam); Fed. R. Civ. P. 12(b).

#### 1. Exhaustion Under the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA") in relevant part provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined to any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 549 U.S. 199, __, 127 S.Ct. 910, 918-19 (2007). Exhaustion under the PLRA requires proper exhaustion, meaning that a prisoner must comply with procedural rules, including filing deadlines, as a

precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001). Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after he has exhausted the prison's administrative remedies. *Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).

### 2. Inmate Grievance Procedures at the D.C. Jail and CTF

The inmate grievance procedure ("IGP") in effect at the D.C. Jail requires an inmate first to seek informal resolution of his complaint with his case manager or other appropriate staff member either by completing an Inmate Request Slip or by notifying staff verbally of the complaint. *See* D.C. Mot., Ex. 1 (Program Statement No. 4030.1E, Inmate Grievance Procedures (IGP)) ¶ 14.a. If the inmate is unable to resolve his complaint informally, he may submit in writing a formal grievance within 15 calendar days of the incident giving rise to the complaint. *See id.* ¶¶ 14.b., 15.a. The IGP Coordinator receives the written grievance and forwards it to the appropriate manager for investigation and resolution.[1] *See id.* ¶¶ 15.c., 15.d. The manager provides a written response via the IGP Coordinator for the Warden's approval within 21 calendar days following receipt of the grievance. *See id.* ¶ 15.e. The Warden reviews the response and either may approve, disapprove, or revise the response. *See id.* Once approved, the Warden returns the grievance to the IGP Coordinator for return to the inmate. *See id.* If the inmate is dissatisfied with the Warden's response, within 5 calendar days, he may file an appeal of the decision to the Deputy Director of the Department of Corrections. *See id.* ¶ 16.a.

---

[1] Among other duties, the IGP Coordinator is responsible for coordinating the retrieval, distribution, tracking, database entry and monitoring of inmate grievances. *See* D.C. Mot., Ex. 1 ¶ 13.a.

An inmate housed at CTF "shall exhaust all provided remedies in the affected facility to include formal and informal resolution efforts." D.C. Mot., Ex. 1 ¶ 16.b. If he is dissatisfied by the CTF Warden's response, the inmate may appeal the decision to the Deputy Director of the Department of Corrections. *See id.* The final step in the IGP process for inmates housed both at the D.C. Jail and at CTF is an appeal of the Deputy Director's decision to the Director of the Department of Corrections. *See id.* ¶ 16.d. The Director responds to the appeal within 21 days following its receipt. *See id.*

### 3. Plaintiff Did Not File an Administrative Appeal

A search of computer records maintained by the Director of the Department of Corrections reflects that the Director received neither correspondence nor a final IGP appeal from plaintiff during 2007. D.C. Mot., Ex. 2 (Thomas Decl.) ¶¶ 8-9. Plaintiff responds by submitting a copy of Grievance No. 853 wherein plaintiff requested an investigation as to the whereabouts of his legal papers and other personal property left behind when he was transferred to New York.[2] The Plaintiff Khaled M. Rashad Shabban's Response to the Defendant U.S. Marshals Service's Motion to Dismiss the Plaintiff's Complaint ("Pl.'s Opp'n"), Attach. (Grievance No. 853 dated June 8, 2007). The form does not show that plaintiff pursued an appeal. *Id.* Notwithstanding plaintiff's numerous contacts with his case manager and a conversation with the Warden at the D.C. Jail, *see* Pl.'s Opp'n at 3-5, plaintiff neither alleges nor demonstrates that he completed all levels of the IGP process either at the D.C. Jail or at CTF. Absent such a showing, the District of Columbia's motion must be granted for plaintiff's failure to exhaust administrative

---

[2] The form does not indicate whether plaintiff filed it while he was incarcerated at the D.C. Jail or at CTF.

remedies. *See Jackson v. District of Columbia*, 254 F.3d at 269 (noting language of Sec. 1997e(a) that no action shall be *brought*, not that no action shall be *tried*, until available administrative remedies are exhausted); *see Eldridge v. District of Columbia*, No. 02-7059, 2002 WL 31898173 *1 (D.C. Cir. Dec. 23, 2002) (per curiam) (upholding dismissal without prejudice for plaintiff's failure to allege or show he had exhausted D.C. Inmate Grievance Procedure), *cert. dismissed*, 539 U.S. 913 (2003); *Johnson v. District of Columbia Dep't of Corr., Transp. Unit*, No. 01-7204, 2002 WL 1349532 *1 (D.C. Cir. June 20, 2002) (per curiam) (upholding dismissal without prejudice for failure to exhaust administrative remedies because the appellant had not filed an inmate grievance).

### B. United States Marshals Service's Motion to Dismiss

The USMS moves to dismiss this action under Rule 12(b)(1) of the Federal Rules of Civil Procedure on the ground that this Court lacks subject matter jurisdiction. *See* USMS Mot. at 3-5.

It appears that the sole basis for plaintiff's claim against the USMS is the Federal Tort Claims Act ("FTCA"), *see* 28 U.S.C. § 2671 *et seq*. Generally, the FTCA provides that the "United States shall be liable [for tort claims] in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674(a). The FTCA operates as a limited waiver of sovereign immunity, rendering the United States amenable to suit for certain, but not all, tort claims. *See, e.g., Richards v. United States*, 369 U.S. 1, 6 (1962). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (citations omitted).

In order to maintain a suit under the FTCA, a claimant first must have "presented

the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). If the agency fails "to make [a] final disposition of a claim within six months after it is filed," it "shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim." *Id.* The FTCA bars a plaintiff from bringing a civil action in district court before he has exhausted these administrative remedies. *See McNeil v. United States*, 508 U.S. 106, 113 (1993). This defect cannot be cured by amendment of the complaint at a later date. "Allowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system." *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999); *see Schneider v. Kissinger*, 310 F. Supp. 2d 251, 269-70 (D.D.C. 2004) (FTCA claim of plaintiffs who submitted administrative claim before filing suit could not proceed upon filing an amended complaint adding FTCA claim after formal denial of administrative claim).

The USMS demonstrates that a search of agency's FTCA claim records yielded no claim filed by plaintiff or on plaintiff's behalf. USMS Mot., Auerbach Decl. ¶¶ 3-5.[3] Although plaintiff lists a number of attempts to locate his property, *see* Pl.'s Opp'n at 3-5, none of these attempts is shown to be an administrative tort claim submitted to the USMS. Absent a showing that plaintiff has filed an administrative claim and has exhausted his administrative remedies, the

---

[3] The Court considers the Declaration of Gerald Auerbach for the purpose of determining whether it has subject matter jurisdiction. Consideration of the declaration does not convert this motion to dismiss into a motion for summary judgment. *See Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197-98 (D.C. Cir. 1992).

Court lacks subject matter jurisdiction over his FTCA claim. The Court will grant the USMS's motion to dismiss.

### III. CONCLUSION

The Court concludes that plaintiff did not exhaust his administrative remedies through all levels of the inmate grievance procedure in effect at the D.C. Jail and at CTF. Nor did plaintiff exhaust his administrative remedies with respect to his Federal Tort Claims Act claim against the United States Marshals Service. Accordingly, the Court grants the District of Columbia's motion for summary judgment and the Marshals Service's motion to dismiss for lack of subject matter jurisdiction. An Order consistent with this Memorandum Opinion is issued separately.

ROSEMARY M. COLLYER
United States District Judge

Date: 7 August 2008